# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

DAVID SWETT,                                    :

                         Plaintiff,

       -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY[1],
                   Defendant.      :

Case No. 3:07-cv-017

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant Commissioner's Motion for Entry of Judgment with Remand Under Sentence Four, 42 U.S.C. §405(g). (Doc. 10). Plaintiff opposes the Commissioner's Motion, (Doc. 11), the parties have fully briefed the issues, (*Id.,* Doc. 10, 12), and the matter is ripe for Report and Recommendations.

The Commissioner has moved the Court to enter a judgment, after substantive review, reversing the Commissioner's decision under sentence four of 42 U.S.C. § 406(g) with remand to the Commissioner. The Commissioner's position is that the matter should be remanded because not all of the factual issues have been resolved and the record does not establish Plaintiff's entitlement to benefits. The Commissioner acknowledges that although Administrative Law Judge Redmond

---

[1] The Court notes that on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. See, http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

obtained vocational expert (VE) testimony, he did not affirmatively inquire as to whether the jobs identified were consistent with the Dictionary of Occupational Titles (DOT).  The Commissioner also acknowledges that Social Security Ruling (SSR) 00-04p indicates that an ALJ has an affirmative duty to ask about any possible conflicts between the vocational expert evidence and information provided in the DOT.  *See* SSR 00-04p, 2000 WL 1898704 (Dec. 4, 2000).   The Commissioner admits that the VE identified jobs that appeared to conflict with Plaintiff's residual functional capacity (RFC), a reduced range of sedentary work, and similar occupational categories in the DOT and that under those circumstances, he (the Commissioner) must obtain additional VE testimony to determine whether any conflict exists with Plaintiff's RFC, the vocational expert testimony, and the DOT.

Plaintiff opposes the Commissioner's Motion arguing that all the factual issues have been resolved and that the record adequately establishes his entitlement to benefits.  Plaintiff's position is that the Commissioner erred in his evaluation of the treating physicians' opinions which establish he is disabled and by rejecting his allegations of disabling pain. In addition, Plaintiff notes that the Appeals Council had previously remanded the matter with instructions to the Administrative Law Judge to, *inter alia*, comply  with SSR 00-04p and that, in spite of the Appeals Council's instructions, Judge Redmond failed to comply with the Ruling.

In his Motion to Remand, the Commissioner essentially concedes  that he erred by relying on the VE's testimony in determining that Plaintiff is not disabled.  It follows, then, that the Commissioner admits that his decision that Plaintiff is not disabled is not supported on substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court

must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

As noted above, the Commissioner moves the Court to enter judgment "after substantive review". (Doc. 10 at 1). Indeed, the Court concludes that a substantive review of the matter is necessary in order to properly address the present Motion.

Plaintiff filed an application for SSD on January 12, 2000, alleging disability from March 18, 1999, due to impairments involving his eyes, shoulders, and cervical and thoracic spines. (Tr. 93-95; 124-33). Plaintiff's application was denied initially and on reconsideration. (Tr. 42-45; 47-49). A hearing was held before Judge Redmond, (Tr. 549-72), who determined that Plaintiff is not disabled. (Tr. 57-69). The Appeals Council granted Plaintiff's request for review and remanded the matter with instructions. (Tr. 78-80).

On remand, Judge Redmond held a hearing, (Tr. 573-604), following which he again determined that Plaintiff was not disabled. (Tr. 18-32). The Appeals Council denied Plaintiff's request for review, (Tr. 7-10), and Judge Redmond's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Redmond found that Plaintiff met the insured status requirement of the Act through June 30, 2003. (Tr. 31, finding 2). Judge Redmond also found that prior to the expiration of his insured status, Plaintiff had severe impairments of blindness in the left eye, chronic cervical strain, degenerative disc disease of the cervical spine, right shoulder strain, degenerative joint disease of the left shoulder, mild vertebrogenic disorder and degenerative disc disease of the lumbar spine, and thoracic strain, but that he did not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* finding 3. Judge Redmond then found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. *Id.*, findings 5, 7. Judge Redmond then used sections 201.28 and 201.21 of the Grid as a framework for deciding, coupled with a VE's testimony, and concluded that there was a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 32, findings 11, 12). Judge Redmond concluded that prior to the date he was last insured, Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 32).

In February, 1998, Plaintiff sustained a job-related injury to his neck, back, and his right shoulder. *See* Tr. 186-90. Plaintiff received chiropractic care for his injury. *Id.*

Plaintiff participated in a reconditioning/work hardening program during the period July to September, 1999. (Tr. 181-92). At the completion of that program, Plaintiff was able to lift up to 25 pounds occasionally and 10 pounds frequently, demonstrated difficulty performing bilateral

4

upper extremity activity overhead, and was able to sit and stand on a frequent basis with the need to change position every 35-45 minutes. *Id.*

Plaintiff was evaluated at the Chronic Pain Center of Miami Valley Hospital on June 2, 1999. (Tr. 370-75). As a result, Plaintiff participated in a return-to-work program at that facility. (Tr. 341-69). It was noted during June, 1999, program that Plaintiff demonstrated above-average muscle tension and spasms bilaterally in his latisimus dorsi region and bilateral upper trapezial muscle tension when standing. *Id.* It was also noted that Plaintiff was in the mildly depressed range on the Beck Depression Inventory. *Id.*

Examining psychologist Dr. Bonds reported on April 13, 2000, that Plaintiff did not finish high school, completed the tenth grade, has not obtained a GED, and last worked in August, 1998, when he quit because he could not do the job any longer. (Tr. 197-204). Dr. Bonds also reported that Plaintiff smelled very strongly of cigarettes and body odor, that his moves seemed normal, his affect was broad and appropriate, that he did not display any overt signs of anxiety such as fidgeting or trembling, and that he was alert and oriented. *Id.* Dr. Bonds noted that Plaintiff did not have sufficient information, insight, or reasoning abilities to make important decisions concerning his future, to live independently or to manage his funds without supervision, that he was initially cooperative, soon became uncooperative, and that his interest and motivation were very low. *Id.* Dr. Bonds noted further that Plaintiff worked extremely quickly, often making careless errors, that his persistence and concentration were poor, that he often gave up on items without even trying, that he often refused to attempt items at all, and that he was very oppositional during the WMS-III Administration. *Id.* Dr. Bonds noted that Plaintiff frequently interrupted her to argue with her as to why he could not complete the items, that it was extremely difficult to get him to give a

5

straight answer, that he seemed to argue in an effort to avoid having to complete the evaluation, and that the results of the evaluation most likely underestimated Plaintiff's actual abilities due to his poor efforts and persistence. *Id*. Dr. Bonds reported that Plaintiff's verbal IQ was 80, his performance IQ was 89, and his full scale IQ was 83, that his scores placed him in the low average range of intellectual functioning, that testing revealed his immediate and general memory to be in the extremely low range and his working memory to be in the borderline range, and that his reading comprehension was below the 1.9 grade equivalent while his rate and accuracy scores were at the 12.7 and 10.2 grade equivalents respectfully. *Id*. Dr. Bonds concluded that Plaintiff had no psychological diagnoses, that his GAF was 60, and that he was able to understand, remember, and follow simple one and two step directions, could maintain his attention and concentration to perform simple routine and repetitive tasks, that his ability to understand, remember, and carry out complex or detailed directions was mildly limited, that his ability to relate to others was moderately impaired by his argumentative behavior and difficulty accepting authority, and his ability to perform consistently without excessive breaks was not significantly limited while his ability to tolerate normal work stress was mildly limited. *Id.*

Examining physician Dr. Danopolus reported on April 17, 2000, that Plaintiff's complaints were neck pain, bilateral shoulder pain, headaches, chest pain, and mid-back pain, sleeping disturbance, right leg pain, and left eye blindness. (Tr. 205-15). Dr. Danopolus also reported that the review of Plaintiff's systems was negative, that his upper and lower extremities revealed full ranges of motion, both shoulders revealed painful but normal motions, left leg muscles were painful by palpation, that musculoskeletal evaluation revealed a limping gait due to pain but without ambulatory aids, and that the spine was painful to pressure in the low cervical and low

dorsal areas. *Id*. Dr. Danopolus noted that Plaintiff's paravertebral muscles were soft and painless to palpation and pressure, that his bilateral straight leg raising was normal, his squatting and arising from squatting was normal, his lumbosacral spine motions were painless, and that Plaintiff resisted cervical spine motions. *Id*. Dr. Danopolus also noted that Plaintiff's neurological examination was normal, that shoulder x-rays were unremarkable, and that the objective findings were early cervical spine arthritis, bilateral shoulder arthralgias, neuralgias, and arthralgias of the thoracic spine, sleeping disturbance helped with hypnotic, left leg myalgias, and rule out schizoaffective disorder. *Id*. Dr. Danopolus opined that Plaintiff's ability to do any work related activities was affected accordingly. *Id*.

In July, 2000, Plaintiff underwent a surgical procedure to treat a retinal detachment of the left eye. (Tr. 236-37).

Plaintiff continued to receive chiropractic care for his alleged neck, back, and shoulder impairments. (Tr. 241-48).

At the request of Plaintiff's chiropractor, Plaintiff was evaluated by neurosurgeon Dr. Goodall on November 10, 2000. (Tr. 376). Dr. Goodall reported that Plaintiff had decreased tricep strength bilaterally, greater on the right than on the left, diffused non-dermatomal decrease of perception of pin prick throughout the right upper extremity, had a positive Tinel's sign on the left and that Spurling's resulted in neck pain. *Id*. Dr. Goodall also reported that there was mild to moderate paraspinal reactivity present in the cervical and thoracic regions. *Id*. Dr. Goodall noted that his impression was that Plaintiff had cervical and thoracic strain, and he (Plaintiff) was considering undergoing a facet rhizotomy. *Id*.

Plaintiff continued to receive chiropractic care for his neck, back, arms/hand, low

back, and right extremity complaints as well as for headaches. (Tr. 241-48).

In February and March, 2001, Plaintiff underwent an evaluation at the Pro-Work Center of Miami Valley Hospital. (Tr. 326-39). It was noted that Plaintiff appeared to put forth genuine effort on all of the assigned tasks, and that he was friendly and caught on to directions quickly. *Id.* Based on the evaluation, it was recommended that Plaintiff would benefit from technical training in electronics repair, that he could currently enter into employment in a courier/driving or lot attendant position without the need for additional training, that he should seek job-seeking skill training, and that he should participate in a structured job search program. *Id.*

On May 30, 2001, treating ophthalmologist Dr. Fleishman reported that Plaintiff was status post intraocular foreign body removal of the left eye with subsequent retinal detachment and that Plaintiff was legally blind in the left eye. (Tr. 38). Dr. Fleishman noted that Plaintiff's right eye was normal. *Id.*

Dr. Donnini has been Plaintiff's treating pain specialist since August, 1999, and he continued to treat Plaintiff through June, 2001. (Tr. 249-303; 391-414). In an undated report, Dr. Donnini noted that Plaintiff's ability to lift and carry were limited by his impairment, that he had decreased right shoulder, cervical, and thoracic ranges of motion and pain to palpation, that he had numbness in his right hand, was able to lift and carry up to 5 pounds occasionally, was able to stand/walk for 3 to 4 hours in an eight hour day and for 1 hour without interruption, and that he was able to sit for 4 to 5 hours a day and from 1 to 2 hours without interruption. (Tr. 386-90).

On January 3, 2002, Dr. Goodall reported that Plaintiff's deep tendon reflexes were equal, he had a decreased range of motion in his cervical spine, positive shoulder signs on the right, and marked paraspinal reactivity in the cervical region. (Tr. 427). Dr. Goodall noted that there was

8

moderate paraspinal reactivity in the thoracic region, that Plaintiff was going to undergo a facet rhizotomy, and that if he failed to respond to that treatment he would recommend repeat MRIs and EMGs. *Id.* Dr. Goodall also reported that Plaintiff was able to lift up to five pounds occasionally and less than five pounds frequently, that he was able to stand/walk for two hours in an eight hour day and for one-half hour without interruption, and that he was able to sit for six to eight hours in a day and for one-half hour without interruption. (Tr. 428-32).

A February 1, 2002, CT of Plaintiff's lumbar spine revealed degenerative disc disease with no evidence of severe neural compromise at any level, a small focal soft disc protrusion at L5-S1 which produced some effacement of the S1 root, and mild to moderate stenosis at the L3-4 level. (Tr. 491).

A February 5, 2002, MRI of Plaintiff's right shoulder revealed a high grade partial thickness tear in the medial third of the rotator cuff on the articular surface, trace amount of subacromial bursitis, some degenerative morphology of the labrum, and some mild osteoarthritic changes at the glenohumeral articulation. (Tr. 435-36).

At the request of Dr. Donnini, Plaintiff consulted with orthopedist Dr. Urse on March 20, 2002. (Tr. 438-39). Dr. Urse reported that Plaintiff had mild paraspinal spasms in the right lower cervical area, a positive two-fingered drop-arm test with resisted external rotation of the right shoulder, that his Hawkin's find was positive, that he had some mild AC tenderness, and that x-rays showed mild narrowing of the AC joint in a Type II Acromion with potential for impingement of the rotator cuff. (Tr. 438-39). Dr. Urse noted that his impressions were rotator cuff tendinitis of the right shoulder, rule out complete rotator cuff tear, rule out occult acromioclavicular arthropathy, and rule out occult glenohumeral arthropathy. *Id.*

9

On April 15, 2002, Dr. Donnini reported that Plaintiff used a cane when walking, that he experienced moderate discomfort with heel and toe walking, squatting, and getting on and off the exam table, that he had localized and specific tenderness and spasms of the right sacroiliac joint and the right facet joints at L4, L5 and S1, and that he had decreased ranges of motion of his spine.  (Tr. 492-94).  Dr. Donnini also reported that Plaintiff's Achilles reflexes were 2/4 on the right and 4/4 on the left, that his sensation was within normal limits, that straight leg raising was positive, and that Plaintiff's diagnoses were lumbar sprain/strain, lumbar radiculopathy, and knee sprain/strain.  *Id.*

An April 19, 2002, MRI of Plaintiff's lumbar spine revealed small focal soft disc protrusion left paracentral L5-S1 producing slight S1 root compression and displacement and mild degenerative changes.  (Tr. 433).  A MRI of Plaintiff's cervical spine performed on that same date revealed mild degenerative changes with no significant neural compression.  (Tr. 434).

On May 24, 2002, an MRI of Plaintiff's left shoulder revealed arthritic changes of the glenohumeral joint mostly along the anterior and inferior aspects, and sedentary degenerative changes.  (Tr. 495).

Plaintiff consulted with Dr. McClure who reported on May 31, 2002, that Plaintiff was able to walk on his heels, that he limped with his right lower extremity when walking on the toes of his right foot, that he was limited on forward bending, that there was tenderness of the right sciatic notch, and that straight leg raising was positive at 30 degrees on the right and 70 degrees on the left.  (Tr. 498-99).  Dr. McClure also reported that Plaintiff's sensation was decreased over the anteromedial right leg, that an MRI revealed degenerative disc disease at L5-S1, and that there was an annular tear that was more apparent on the left side. *Id*.  On July 2, 2002, Dr. McClure noted that follow-up studies did not reveal significant nerve root compression on the right which would explain

Plaintiff's pain, and that he did not recommend surgery. (Tr. 496).

Plaintiff continued to treat with Dr. Donnini during the period August 29, 2001, through June 5, 2002. (Tr. 442-69). During that period of time, specifically on May 2, 2002, Dr. Stratton, an associate of Dr. Donnini's, evaluated Plaintiff and reported that Plaintiff gave verbal expressions of pain during the examination, that his attention/concentration, speech, communication, thought content, and memory were all within normal limits, that Plaintiff was oriented, and that his mood and affect were slightly depressed. *Id.* Dr. Stratton also reported that passive motion of Plaintiff's left shoulder was slightly stiff, that on palpation he had tenderness of the left subacromial and subdeltoid bursa and the left deltoid and that range of motion was normal but with soreness at full range of abduction and rotation. *Id.* Dr. Stratton's impression was sprain of an unspecified site of the shoulder/upper arm and he recommended that Plaintiff continue with his medications. *Id.*

Neurosurgeon Dr. West reported on September 13, 2002, that Plaintiff had palpable tenderness in the posterior cervical musculature, his range of motion was limited, there were no unilateral sensory or motor deficits, and that reflexes were equal bilaterally. (Tr. 503-04). Dr. West also reported that Plaintiff had palpable tenderness in the lower lumbar region, that his lumbar ranges of motion were decreased, that he had a negative straight leg raising on the left but a positive straight leg raising at 45 degrees on the right, and that his impression was small herniated lumbar disc L5-S1 on the left with primarily right leg pain. *Id.* Dr. West noted that he would not recommend surgical intervention. *Id.*

Plaintiff continued to treat with Dr. Donnini through at least August 7, 2003. (Tr. 480-90).

On September 10, 2003, Dr. Urse reported that examination of Plaintiff's cervical

11

spine revealed no pain on range of motion, some slight pain to palpation over the trapezius muscle on the left, examination of the thoracic spine showed full motion without tenderness, examination of the upper extremities was normal, and that examination of the left shoulder showed marked pain on range of motion primarily on abduction as well as forward flexion, pain on abduction against resistance, pain to palpation over the anterior leading edge of the acromion, and detectable crepitus. (Tr. 517-18). Dr. Urse also reported that there was tenderness over the left AC joint, questionable two-fingered drop-arm test against resistance, and that Plaintiff should undergo an arthroscopy of the left shoulder with post operative physical therapy. *Id*.

On December 4, 2003, Dr. Urse reported that Plaintiff was able to occasionally lift and carry up to 15 pounds and up to 10 pounds frequently, that his ability to sit was not affected by his shoulder impairment, that he could use his right arm occasionally but his left arm should be used less than occasionally, and that Plaintiff was able to perform sedentary work but could not perform light work. (Tr. 474-79).

The medical advisor (MA) testified at the second administrative hearing that the evidence did not document loss of neurological functioning, that in view of the multiple areas which Plaintiff's impairments affect, he would be limited to sedentary work with no overhead lifting, with a sit/stand option not to leave the work station, and that he should avoid repetitive twisting, concentrated exposure to cold, heat, wetness, humidity, and trunk vibration, as well as heights and hazardous areas. (Tr. 581-89). The MA also testified that Plaintiff would have to work mostly with his elbows bent and his forearms resting on a surface to use his hands, that it appeared that Plaintiff's physicians believed he was having the symptoms that he reported, that the pain that Plaintiff described could stem from the objective medical findings, and that it appeared that Plaintiff had had

12

a significant amount of pain for several years based on the treatment record. (Tr. 597-600).

As noted above, Plaintiff alleges in his Statement of Errors, that the Commissioner erred in his evaluation of the treating physician's opinions which established he is disabled and by rejecting his subjective allegations of disabling pain. (Doc. 7). Plaintiff also alleges that the Commissioner erred by relying on the VE's testimony because he failed to elicit testimony concerning the DOT. *Id.* Plaintiff's position is that the VE's testimony conflicts with the DOT and therefore the Commissioner erred by relying on that testimony. *Id.*

As noted above, the Commissioner has conceded that his decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole and should be reversed. The question, then, is whether all of essential factual issues have been resolved and the record adequately establishes Plaintiff's entitlement to benefits.

Plaintiff argues first that the opinions of his treating physicians Drs. Donnini and Goodall as well as his chiropractor's opinion establish that he is disabled. However, for the following reasons, this Court concludes that the Commissioner did not err as Plaintiff alleges.

First, the Court notes that a chiropractor is not an acceptable source of medical evidence. 20 C.F.R. §§404.1513. The Commissioner is not required to give controlling weight to a chiropractor's opinion nor is he required to adopt a chiropractor's opinion. *Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997); *Lucido v. Commissioner of Social Security,* No. 03-3713, 2005 WL 221528 at * 2 (6th Cir. Jan. 31, 2005).

A treating physician's opinion is entitled to weight substantially greater than that of either a nonexamining medical advisor or an examining physician who saw a claimant only once. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983).

13

In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997).

Although Dr. Goodall questioned whether Plaintiff could perform sedentary work on a sustained basis, with the exception of his limiting Plaintiff to lifting up to 5 pounds, Dr. Goodall's opinion as to Plaintiff's residual functional capacity is consistent with Judge Redmond's findings

14

as to Plaintiff's residual functional capacity.  *See* Tr. 428-32.  Specifically, as noted above, Dr. Goodall reported that Plaintiff  was able to stand/walk for 2 hours in an eight hour day and for one-half hour without interruption, and that he was able to sit for six to eight hours in a day and for ½ hour without interruption.  Nevertheless, for the same reasons that the Commissioner properly rejected Dr. Donnini's opinion, *infra*, the Commissioner had an adequate basis for rejecting Dr. Goodall's opinion that Plaintiff was able to lift only five pounds.

In rejecting Dr. Donnini's opinion that Plaintiff was not capable of performing even sedentary work, Judge Redmond determined that Dr. Donnini's opinion was not supported by the objective medical evidence and was inconsistent with the other evidence of record.  (Tr. 27).  This Court agrees.

First, when he opined as to Plaintiff's residual functional capacity, the only objective findings Dr. Donnini reported were decreased ranges of motion and pain to palpation.  Subsequently, Dr. Donnini noted that Plaintiff had, at worst, tenderness, spasms, positive straight leg raising, and decreased ranges of motion.   In addition, Dr. Donnini's voluminous office notes primarily contain Plaintiff's subjective complaints.  While there are some reports of objective medical findings, those findings are reflected in a "check list" fashion, essentially include tenderness and muscle spasms, and do not contain a description of the severity of those findings.

In addition, as Judge Redmond determined, Dr. Donnini's opinion is inconsistent with the other evidence of record.  For example, while Dr. West reported that Plaintiff had limited ranges of motion and muscle tenderness, he also reported that Plaintiff no sensory or motor deficits and that his reflexes were equal bilaterally.  Further, Dr. Urse reported that while Plaintiff had marked pain on range of motion of his left shoulder, he had only slight pain to palpation over his

trapezius muscle on the left, no thoracic spine tenderness. Dr. Urse opined that Plaintiff was able to occasionally lift and carry up to fifteen pounds and up to ten pounds frequently, that his ability to sit was not affected by his shoulder impairment, that he could use his right arm occasionally but his left arm should be used less than occasionally, and that Plaintiff was able to perform sedentary work. In addition, Dr. Danopulos reported that Plaintiff's paravertebral muscles were soft and painless to palpation, his bilateral straight leg raising and squatting were normal, and his neurological examination was normal. Further, the MA testified that Plaintiff was able to perform sedentary work.

Finally, Dr. Donnini's opinion is not supported by the objective medical test results. For example, a CT scan of Plaintiff's lumbar spine revealed only degenerative disc disease, a small focal soft disc protrusion, and mild to moderate spinal stenosis. An MRI of Plaintiff's lumbar spine revealed, at worst, a small focal soft disc protrusion producing a slight root compression, and mild degenerative changes. With respect to Plaintiff's alleged shoulder impairment, an MRI revealed only a partial thickness rotator cuff tear, a trace amount of bursitis, and some degenerative morphology.

Plaintiff argues next that the Commissioner erred by rejecting his allegations of disabling pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an

16

underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

   The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. *Jones, supra.* There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. *Id.* Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork. *Id.* The Commissioner's own guidelines acknowledge the most inexact nature of this evaluation:

> Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity. Whenever available this type of objective medical evidence must be obtained and must be considered in reaching a conclusion as to whether the individual is under a disability.

*Jones,* 945 F.2d at 1369-70, *quoting* S.S.R. 88-13.

   In finding that Plaintiff was less than entirely credible, Judge Redmond concluded that Plaintiff's allegations were not supported by the evidence of record. (Tr. 29).

For the same reasons that the Commissioner did not err in rejecting Dr. Goodall's and Dr. Donnini's opinions, *supra*, the Commissioner had an adequate basis for rejecting Plaintiff's allegations of disabling pain. That is, there few, if any, *Jones* "reliable indicators" documented in the record, the reports and opinions of Drs. West, Goodall, and Urse, do not support Plaintiff's allegations, and the objective medical test results are inconsistent with allegations of disabling pain.

Plaintiff's third Error is, of course, the subject of the Commissioner's present Motion. As noted above, the Commissioner has conceded that he erred by relying on the VE's testimony because he failed to elicit testimony about the DOT and he seeks remand for the purpose of obtaining that testimony. On the other hand, Plaintiff argues the Court should not remand for the purpose of obtaining additional VE testimony but rather for payment of benefits. Plaintiff's position is the VE's testimony establishes that there is not a significant number of jobs in the economy that he is able to perform.

Under the regulations, work exists in the national economy when it exists in significant numbers either in the region where a claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). There is no bright line boundary separating a "significant number" from insignificant numbers of jobs. *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir, 1988). What constitutes a significant number of jobs is to be determined on a case-by-case basis, *Id.* In mading its determination, the court should consider the level of claimant's disability, the reliability of the vocational expert's testimony, the reliability of the claimant's testimony, the distance claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs, the types and availability of such work, and so on. *Id.*; *see also. Born v. Secretary of Health and Human Services,* 923 F.2d 1168, 1174 (6th Cir. 1990). These factors are suggestions only; the ALJ is not required to

18

explicitly consider each factor. *Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir. 1999).

In this case, in response to Judge Redmond's hypothetical question which included Plaintiff's RFC as found by Judge Redmond, the VE identified 2,4000 jobs in two occupational categories that Plaintiff could perform. (Tr. 601). However, there is no evidence as to whether those jobs are consistent with the DOT. In addition, in response to a hypothetical question that Plaintiff's counsel presented, the VE identified approximately 1200 jobs which Plaintiff could perform. (Tr. 602). Even assuming that there are only 1200 jobs that Plaintiff was capable of performing, this Court cannot say that 1200 jobs is not a significant number of jobs under the circumstances of this case.

This Court concludes that not all of the factual issues have been resolved in this case. Specifically, there is a factual issue as to whether the jobs which the VE identified are consistent with the DOT. Accordingly, the Commissioner's Motion to remand, (Doc. 10), should be granted.

It is therefore recommended that judgment be entered in favor of Plaintiff and against the Commissioner reversing the Commissioner's decision that Plaintiff is not disabled. It is also recommended that this matter be remanded to the Commissioner for the purpose of obtaining VE testimony as to whether, during the February 18, 2004, hearing, the jobs the VE identified in response to Judge Redmond's hypothetical question are consistent with the DOT and, if not, whether there is a significant number of jobs in the economy which Plaintiff was able to perform prior to the expiration of his insured status.

September 14, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

19

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).